[No. 2534]

## ELLIOTT GOODRICH, Et Al., Respondents, *v.* THERON STEVENS and JOHN S. COOK & CO. (a Corporation), Appellants.

[208 Pac. 431]

1. PUBLIC LANDS—EXCESSIVE AMOUNTS EXACTED AS FEES FOR ATTORNEY BY TRUSTEE UNDER STATUTE FOR RELIEF OF INHABITANTS ON PUBLIC LANDS HELD BY HIM UNDER A CONSTRUCTIVE TRUST.

Where one who, by virtue of being district judge was ex officio town-site trustee for execution of a trust arising under federal statute for relief of inhabitants on public lands, fully executed the trust, but under mistake as to his power demanded and received too great an amount from those for whom deeds were obtained, as fee for the attorney, he holds the excess, not under such trust, but as trustee under a constructive trust, his liability for which is directly to those who made the excess payments; so such funds may not be ordered paid to his successor as judge, as his successor as trustee under the original trust.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *C. J. McFadden,* Judge.

Action by Elliott Goodrich and others against Theron Stevens and another. From an adverse judgment and an order denying a motion for new trial, defendants appeal. **Reversed.**

*E. Carter Edwards,* for Respondents:

The subject-matter of the action being a trust, and

the remedy being the enforcement of the execution of the trust and an accounting therein, to fill a vacancy in the trust caused by the absence of the trustee from the state for more than ninety consecutive days, the jurisdiction is exclusively in equity. When the question is one of common or general interest of many persons, or when the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all. Rev. Laws, 5001. Trusts and trustees, accountings therein and thereby, and injunctive relief, are subjects of exclusive equity jurisdiction. 2 Pomeroy's Eq. Jur., sec. 987.

"Trustees who have the possession of trust property, under the terms of the instrument creating the trust, are chargeable in their accounts with the whole of the estate committed to them; and they have not fully accounted until the whole estate is finally disposed of, and they will remain subject to be called to account until this is done and the trust is fully executed and the trustees are entitled to their discharge." 39 Cyc. 468, 469; McAdoo v. Sayre, 78 Pac. 874.

*John F. Kunz,* for Appellant:

It is conceded by the pleadings that the appellant is an involuntary trustee. Plaintiff has a plain, speedy and adequate remedy at law, based upon the amount overcharged by the appellant, upon an action as for money had and received. The only ground for complaint, and the only cause of action set up, is an overcharge. The record admits the overcharge, and shows an affirmative action upon the part of appellant to secure a modification of the injunction to permit him to repay the excess. So far as the execution of the trust is concerned, it has been executed, and the only grievance of which plaintiff can complain is the overcharge made for the lots for which he applied. "The same allegation would be good against a thief who had actually stolen the money, and assuredly it cannot be said that a demand upon one who it is alleged has wrongfully taken and wrongfully holds

money constitutes an equitable action to enforce a trust." Austin v. Wilcoxen, 149 Cal. 24, 84 Pac. 417.

The action cannot be maintained by plaintiff on behalf of himself and all others similarly situated. "It should be carefully observed that this provision does not create any new rights of action, nor enlarge any of those now existing. The suit cannot be sustained by one as the representative of many others who really sue in his name, unless it could have been maintained if all these many others had been regularly joined as co-plaintiffs, or unless it could have been maintained by each one of them suing separately and for himself." Pomeroy's Rem. & Rem. Rights, sec. 390; Carey v. Brown, 58 Cal. 180; Donovan v. Stevens, 179 Cal. 32, 175 Pac. 400.

By the Court, DUCKER, J.:

This is an appeal from a judgment and amended judgment in favor of respondents, by which the present district judge of the Seventh judicial district court of the State of Nevada, in and for Esmeralda County, is declared to be the successor of the appellant, Theron Stevens, as trustee of the Goldfield and South Goldfield town sites, Esmeralda County, Nevada, and directing the latter to account to the former as such trustee and turn over to him all moneys and funds pertaining to his trust. A temporary injunction issued on the filing of the complaint was made permanent. An appeal is also taken from an order of the court denying a motion for a new trial.

According to the allegations of the amended complaint, the respondents are residents of the town of Goldfield, county of Esmeralda, State of Nevada, and brought this action in their own right and behalf, and on behalf of all other persons similarly situated, in respect to the matters and things alleged, who may desire to take advantage thereof.

The appellant, Theron Stevens, since the 1st day of August, 1911, and up to the time of the filing of the complaint, was a resident of the city of San Diego, State

of California, and prior to said time was a resident of
the town of Goldfield, county of Esmeralda, State of
Nevada. For about two years prior to and until the
1st day of January, 1911, said Stevens was one of the
district judges of said court. The defendant John S.
Cook & Co. is a corporation, conducting a general bank-
ing business in Goldfield. The appellant, prior to the
19th day of June, 1909, and until the 1st day of January,
1911, by virtue of his office as district judge, was ex
officio trustee for the inhabitants, citizens, and occu-
pants of the town site of Goldfield, county and state
aforesaid, under and in pursuance of an act of Congress
of the United States, entitled "An act for the relief of
the inhabitants of cities and towns upon the public
lands," approved March 2, 1867 (14 Stat. 541), and also
under an act of the legislature of the State of Nevada
(Stats. 1869, c. 28) entitled "An act prescribing rules
and regulations for the execution of the trust arising
under an act of Congress entitled 'An act for the relief
of inhabitants of cities and towns upon the public lands,'
approved March 2, 1867," approved February 20, 1869,
together with all of the acts amendatory thereof and
supplemental thereto. Since the 1st day of January,
1911, the appellant has assumed and still assumes the
right to discharge and execute said trust, under the act
of the legislature of the State of Nevada above men-
tioned.

On the 19th day of June, 1909, in the execution of
said trust, and as such judge and trustee, the appellant
entered, at the United States land office at Carson City,
Nevada, for the use and benefit and on behalf of the
occupants and inhabitants thereof as the town site of
Goldfield and South Goldfield, certain tracts of land
particularly described. On the 18th day of November,
1909, patents for said lands were issued by the United
States to appellant, judge and trustee aforesaid, for
the use and benefit of said inhabitants and occupants,
which patents were thereafter delivered to appellant
and by him duly recorded. On the date of said entry

respondents were the sole owners, in sole possession of and entitled to the possession of certain lots of land forming part of the tracts of land entered by and patented to the appellant. Upon consideration of applications duly made appellant held and decided that respondents were entitled, under the statutes of the United States and of the State of Nevada, to deeds, or a deed, to the premises possessed by them as aforesaid, and advised them that a deed covering all of said lots would be delivered to them upon their paying to appellant, as fees, commissions, or other charges, the following amounts respectively: $9.50 for single lots, conveyed by one deed, and $7.50 for all lots additional to the first, when more than one lot was conveyed in a single deed.

It is alleged that respondent Elliott Goodrich paid the following amounts for his lots: For lot 5, block 45, the sum of $9.50; for lot 4, block 49, the sum of $7; for lot 16, block 67, the sum of $9.50—being the total amount of $35.50 ($26) for all of said lots. The sums, so demanded of respondent by appellant, before the delivery of said deeds, are, it is alleged, in large part illegal, excessive, and more than appellant was entitled to charge and demand by law; that the maximum amount which appellant was entitled in any event to demand of Elliott Goodrich was $5.50 for the first lot, and $3.50 for each of said additional lots included in said deed, being in any event not exceeding $16 in the case of Elliott Goodrich, for said entire deeds, and that the amount so demanded was in excess of that allowed by law in the case of Elliott Goodrich, in the sum of $19.50. It is alleged that respondents, not as willing or voluntary payments upon their part, but solely because such payment was positively demanded and insisted upon by appellant as a prerequisite to the delivery of said deeds, and because otherwise respondents would, by the wrongful act of the appellant, have been deprived of evidence of their title to said lands, paid to appellant, in the case of Elliott Goodrich, the sum of $35.50, and a like amount in the case of respon-

dents and all other lot owners receiving trustee deeds. Appellant, on the 15th day of February, 1910, delivered said deeds to respondent Elliott Goodrich, which he thereupon immediately recorded.

It is alleged that subsequently the Supreme Court of the State of Nevada in certain decisions held that the maximum amount that appellant could charge a lot owner for all purposes connected with the delivery of a deed was the sum of $5.50 for the first lot and $3.50 for each additional lot included in said deed. Subsequently to the decisions of the supreme court, the respondent made a demand upon the appellant for a refund of the amount received by him in consideration of the issuance of respondent's deeds, in accordance with the law of the case as laid down by the supreme court. Upon such demand, the appellant repeatedly admitted that in view of such decisions his said charges to respondent for the delivery of said deeds were, to the extent of all amounts above $5.50 for the first lot, and $3.50 for each additional lot, illegal and improper, and further expressed his willingness and desire to refund to respondents and to all other persons likewise situated all amounts so in excess of law paid to him for town-site deeds, conditional only upon the dismissal from the files of said district court an action then and now pending, entitled J. P. Camou v. Theron Stevens, James Donovan, et al. In further answer to said demand of respondents, appellant assured the agents and attorneys of the former that the funds received by him from the lot owners of the town site of Goldfield had been preserved intact, and were being held as a trust fund, and would be so held until all matters connected therewith were finally disposed of, and further assured said agents and attorney that the pendency of the Camou case was all that stood in the way of an immediate settlement of said matters, and that settlement would at any time be made upon the dismissal of said case. Respondents have personal knowledge of the fact that, aside from their own lots, as hereinbefore referred to, at least 118 lot owners of said town site,

owning and claiming at least 230 lots, were required by appellant to pay for said lots before delivery of their deeds the same relative amount or amounts charged to and demanded of respondents, and that the aggregate of the amounts so demanded of and paid by said persons for said lots was about the sum of $2,195, and that in respect to said other persons and lots said appellant is under like legal obligation to repay the excess so demanded and received.

It is further alleged that in addition to the persons and lots last mentioned the appellant demanded and received a like illegal and unlawful amount for the delivery of deeds of 2,373 town lots of said town site, and to all of which the appellant is legally responsible for the return to said lot owners of the amounts so illegally collected, and that the total amounts received was about $24,728.50, all of which was illegal except at the rate of $5.50 for a first lot and $3.50 for each additional lot included in deeds.

Prior to his change of residence from the town of Goldfield to the said city of San Diego, Calif., appellant deposited with the defendant John S. Cook & Co., in the name of Theron Stevens, as trustee, about the sum of $14,000, and that upon his change of residence, as aforesaid, that sum, or about that sum, remained on deposit with the said banking company, subject to the check or draft of appellant. Since his change of residence from Goldfield to San Diego, and from time to time, and in varying amounts, appellant withdrew, by check, draft, or otherwise, from said trust fund, so originally on deposit in said bank, upwards of $9,000 thereof, so that there remained at the time of the filing of the complaint only about $5,000 in the county of Esmeralda. It is alleged that it is the intention of the trustee to further draw checks or drafts on said deposit fund and remove the same from the jurisdiction of this court and from the State of Nevada. Appellant is not the owner of any real or personal property in the State of Nevada, and the only part or parcel of the proceeds of the sale

of said town lots still remaining within said county of Esmeralda, State of Nevada, is the sum on deposit in the banking house of said defendant, John S. Cook & Co., and if the balance is permitted to be withdrawn, the respondents and all lot owners similarly situated will be absolutely without any legal or effective remedy for the recovery from said appellant of the amounts of money so illegally demanded and received by him from them upon the delivery of said deeds.

Appellant has ceased to be a resident of the State of Nevada and of the Seventh judicial district or any other place or places in which his duties were or are to be exercised, and has ceased to discharge his duties as such trustee for a greater period than three months, which cessation was not caused by sickness, or absence from the state as provided by law. Appellant has been absent from the state for a greater period than ninety days immediately preceding the filing of the complaint, to wit, continuously from August 18, 1911, to the date of filing thereof.

It is alleged that appellant is an involuntary trustee for all the funds and moneys so held by him in said bank due and owing by him to lot owners for excess payments. It is also alleged that the Hon. J. Emmett Walsh is the successor in the office of district judge of Theron Stevens, and that as such successor has full power and authority to assume and complete the execution of said town-site trust, under the laws of the United States and of the State of Nevada, and has the power, upon an accounting being made by him of the funds and moneys of said town-site trust, to make all necessary orders for the distribution of said fund to and among those legally entitled thereto, and to give such notices to lot owners residing in Esmeralda County, or the State of Nevada, or residing out of the State of Nevada, or deceased, as are fit and proper, and to make such disposition of any part of said funds and moneys that shall remain unclaimed or uncalled for, after due notice is given to lot owners as aforesaid.

Judgment is asked that the court declare said office of trustee formerly held by appellant to have been vacated, and that a vacancy now exists therein, and that to fill the vacancy so existing said court and the judge thereof assume said trust and complete the execution thereof, under the town-site statutes of the United States and of the State of Nevada; that pending the final hearing of this action the appellant be restrained and enjoined from in any manner, by check, draft, bill of exchange, order, or other paper, or instrument, withdrawing or attempting to withdraw from the custody of the said defendant the said John S. Cook & Co. any further or other sums of money whatsoever, and also from in any manner disposing or attempting to dispose of said funds on deposit in said bank, and that the defendant John S. Cook & Co. be likewise restrained; that an order of this court be made directing appellant to segregate the funds held by him on deposit in the bank of John S. Cook & Co., Goldfield, Nevada, and in the American National Bank at San Diego, Calif., and by such segregation show the part he holds as involuntary trustee, and the part he held as town-site trustee, immediately before he departed from the State of Nevada, and made his residence in the city of San Diego, State of California, as aforesaid; that an order of court be made, directing appellant to account as involuntary trustee for all the moneys he holds collected from lot owners as excess payments, and for general relief.

The defendant Theron Stevens filed an answer, containing, in substance, the following denials and allegations.: Denies that, as trustee, he was entitled to demand and receive for lots conveyed to the plaintiff Goodrich a sum not to exceed $16, and denies that the sum demanded by him was in excess of that allowed by the law; denies that he, either individually or as trustee, demanded any payment of any sum of money, or insisted upon such payment by the plaintiff Goodrich, and denies that the purchase price of his lots was not

willingly and voluntarily paid by the plaintiff Goodrich, and that by any wrongful act of the trustee the said plaintiff would have been deprived of the evidence of his title. The answer denies that a demand was made upon the said trustee for a refund of any sum whatever by the plaintiff Goodrich, or his agents or attorneys, and denies that he, at any time, assured the agents or attorneys of the said plaintiff that any sum held by him would be preserved intact as a trust fund. The answer admits that said trustee stated to the attorney for the plaintiff Goodrich that so much of the funds as was claimed to be illegally collected from the lot claimants was held as a trust fund, and would continue to be so held as a trust fund until the issues raised in a certain suit then pending in the district court of Nevada, in which one J. P. Camou was plaintiff and the said Theron Stevens, as trustee, and James Donovan, were defendants, could be finally disposed of, and the answer alleges that said case has not been determined; denies that the plaintiff Goodrich has personal knowledge of the fact that 118 lot owners of said town site were, by the trustee, required to pay for said lots the same relative amounts as charged and demanded of plaintiff Goodrich, and denies that the said trustee is under any legal obligation to pay the excess so demanded or received, and that the said trustee demanded or received any sum whatever from the lot claimants in excess of the fees paid him as trustee of said town sites; the said defendant Theron Stevens further denies that as trustee he demanded or received a like or illegal or unlawful amount for the delivery of deeds to 2,373 town lots of said town site, and that he is legally responsible for the return of any sum whatever to said lot owners; denies that the defendant Theron Stevens received about the sum of $24,728.50 on said lots, or any sum whatever, except such portion of the fund collected as he was legally entitled to receive; denies that the plaintiff Goodrich is or will be deprived of an effective

remedy for the recovery from the said defendant of any sum of money that may be due him.

As a further and affirmative defense to said complaint the answer alleges certain formal allegations concerning the defendant's position as district judge, his application as trustee for patents to the lands referred to, and certain other and sundry matters as heretofore stated. In addition, however, the answer affirmatively sets forth that included in the sum of $9.50 per lot was the sum of $3.45 per lot, which was assessed against the same as attorney's fees to pay one James Donovan for services in representing the lot claimants, and that in the judgment of the trustee the said fee was reasonable and was proper to be taxed under and by virtue of section 7 of the acts of the legislature of the State of Nevada, as herein referred to; that when the deeds were ready for delivery the defendant, as trustee, sent a notice to several claimants, stating that deeds would be delivered upon the payment of the fees and charges so assessed; that the original plaintiff in this action, Elliott Goodrich, had filed upon and deeds were prepared for four lots in said town site, and said plaintiff Goodrich received the notice aforesaid; that on the 16th day of February, 1910, the said Goodrich paid to the said trustee the sum of $35.50, being the sum which had been assessed upon his said land, and a deed was delivered by the said trustee to the said Goodrich; that at the time of payment and delivery of deed the said Goodrich offered no objection whatever to the amount of charge, and at no time until the beginning of this action was defendant aware that said Goodrich was in any manner dissatisfied with the amount of the fees and charges so collected, and that the said Goodrich paid said sum voluntarily and willingly, and seemed to be satisfied that the charges were reasonable and just; that at the said time neither the legality nor the reasonableness of the fees and charges so assessed against said lots was questioned by any person or persons, and that

all amounts had been paid freely and voluntarily and
without objection; that on the 22d day of February,
1910, this defendant, as such trustee, paid to James
Donovan, as attorney's fees, $1,000, which was his por-
tion of the fees and charges which had been collected to
said date, being the sum of $3.45 per lot, and answer
further alleges that if the plaintiff Goodrich in this
action had a valid claim against any one for the refund
of the said sum of $3.45 per lot, it is against the said
James Donovan, who received the money that was paid
to the trustee by the said Goodrich with full knowledge
of the facts and without any objection.

For a further and third defense the answer alleges
that the district court of the Seventh judicial district of
the State of Nevada, in and for the county of Esmeralda,
has no jurisdiction of the subject-matter of this action.
The prayer is that the action be dismissed and the
injunction dissolved.

So far as the record discloses, the trial court made no
findings, but filed a written opinion, and ordered judg-
ment in substance as heretofore indicated.

It is contended that the court was without jurisdiction
to render such judgment, and in that contention we
concur. An examination of the written opinion of the
trial judge reveals that the theory upon which he ren-
dered judgment was that appellant, in relation to the
payments made to him for deeds to town lots in excess
of the statutory charges, was a town-site trustee, and,
having absented himself from the state for more than
the statutory period of ninety days, it was lawful for
the incumbent judge to assume said trust and execute it.
This is a mistaken theory. An examination of the
statutes alleged in the amended complaint under which
appellant acted in the capacity of town-site trustee, in
the light of the facts of this case, reveals that nothing
remains to be done by him in pursuance of that trust.
The trust has been fully executed. In administering it,
appellant demanded and received the excess payments

under the mistaken notion that it was lawful for him to do so. His acts in this respect were not done in pursuance of his duties or authority as a town-site trustee, and were null and void.

Notwithstanding the entire good faith of the appellant in exacting payments for deeds to town-site property beyond the amounts allowed by law, he has nevertheless come wrongfully into the possession of funds belonging to others. He has obtained title to property which it is inequitable for him to hold, and becomes therefore, by operation of law, a trustee of the money so gained and held for the benefit of the persons who would otherwise have it. The same equitable principle is involved as was applied by the Supreme Court of California in Donovan v. Stevens, 179 Cal. 32, 175 Pac. 400, in which case this appellant was declared and held to be an involuntary trustee for the inhabitants of Goldfield and South Goldfield.

In California, trusts are divided by statute into voluntary and involuntary trusts. Under this classification the former are express trusts, and the latter implied trusts. In the case, supra, Donovan had acted as an attorney for the occupants of the lands embraced within the town of Goldfield in procuring a patent for said lands, under a contract by which they agreed to pay him $10 per lot. The appellant, as town-site trustee, deeming the amount excessive, submitted the question of a proper fee to four arbitrators, who determined that the value of Donovan's services was $3.45 per lot. This amount was apportioned and assessed by the appellant against each lot. The court was of the opinion that the arbitration was not the making of a new contract between the attorney and his alleged clients, but merely the fixing of an amount which the trustee recognized as a just compensation, and which he believed he had the power to assess under the statute.

"He was mistaken in this," said the court, "and collected too great a sum of money. This makes him an

involuntary trustee as to the excess, not for plaintiff, but for the inhabitants of Goldfield and South Goldfield."

This decision is squarely in point in the present case as to the character of the trust impressed upon the funds held by appellant and belonging to lot owners. We have in this state no such statutory division of trusts, but under well-established principles the trust which appellant holds falls within the classification of involuntary trusts. It is a constructive trust, entirely independent of the trust which was imposed upon him by the statute, and is raised by the circumstances under which he received and holds the funds. There is no statutory requirement or other rule of law requiring him as a trustee of a constructive trust to account or turn over the trust funds in his possession to the district judge of said district.

Counsel for respondents in his brief sets out a number of grounds of equity jurisdiction upon which he claims this action is based, and discusses them at length. It is sufficient to say these principles, while correct in the abstract, are not applicable in this case, and cannot be invoked to uphold the judgment in this case. The court was without authority to render it. Appellant's liability runs to the lot owners, and cannot be relieved by payment to another. This liability he appears willing to discharge. In fact, at the time of the trial of the case counsel for appellant offered to permit judgment to be entered in favor of respondents for the rebate to which they were entitled, which was not accepted.

The judgment is reversed.

SANDERS, C. J.: I concur.

COLEMAN, J., did not hear the argument in this case nor participate in the consideration and determination thereof.